Asaf Fulks (SBN 343622)
**ASAF FULKS LAW**
24433 Citrus Hill Rd.
Wildomar, CA 92595
Tel: (323) 244-9794
Email: asaf@asaffulkslaw.com

Attorney for Plaintiff ASAF FULKS

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

| | |
|---|---|
| ASAF FULKS, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>RAYMOND JOHN BALDONADO JR., an individual, d/b/a FATELL and FATELL MUSIC GROUP; and FRENZEE BROADCASTING, a California Corporation (Entity No. 4772622),<br><br>    Defendants. | **Case No.:** _____<br><br>**COMPLAINT FOR:**<br>**(1) COPYRIGHT INFRINGEMENT (17 U.S.C. § 501);**<br>**(2) BREACH OF ORAL CONTRACT;**<br>**(3) FRAUD / INTENTIONAL MISREPRESENTATION;**<br>**(4) UNJUST ENRICHMENT;**<br>**(5) UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200);**<br>**(6) BREACH OF FIDUCIARY DUTY;**<br>**(7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**(8) ACCOUNTING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Asaf Fulks ("Plaintiff" or "Fulks") hereby alleges as follows against Defendant Raymond John Baldonado Jr. ("Defendant" or "Baldonado"), individually and doing business as Fatell and Fatell Music Group, and against Defendant Frenzee Broadcasting, a California corporation (Entity No. 4772622) ("Frenzee Broadcasting"), as follows:

**NATURE OF THE ACTION**

1. This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., and for related state law claims arising from Defendant's systematic and willful misappropriation of Plaintiff's original musical compositions, sound recording productions, and creative contributions over a fifteen-year professional collaboration. Defendant registered Plaintiff's work solely in his own name, collected all royalties, broke repeated written promises to correct crediting failures, and ultimately recorded and publicly performed a new version of a song built on Plaintiff's copyrighted composition after receiving an express cease and desist.

1

**COMPLAINT**

## PARTIES

2. Plaintiff Asaf Fulks is an individual residing in Wildomar, California, within the Central District of California. Plaintiff is a licensed attorney (California State Bar No. 343622), a professional music producer, audio engineer, and composer who operated The OC Recording Company for over twenty years.

3. Defendant Raymond John Baldonado Jr. is an individual residing in or around Burbank, California, within the Central District of California. Defendant operates under the stage name "Fatell" and conducts business through Fatell Music Group and Frenzee Broadcasting. Frenzee Broadcasting is a California stock corporation (Entity No. 4772622) founded by Defendant Baldonado on July 30, 2021. Frenzee Broadcasting is currently suspended by the California Franchise Tax Board. Defendant Baldonado is the registered agent for service of process for Frenzee Broadcasting. Through these entities, Defendant releases, distributes, and monetizes musical recordings. Defendant's business address is 4000 W Burbank Blvd, Burbank, CA 91505. Defendants Baldonado and Frenzee Broadcasting are collectively referred to herein as "Defendant" except where otherwise specified.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over Plaintiff's copyright infringement claim pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (copyright actions).

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims arise from the same case or controversy as the federal copyright claim and share a common nucleus of operative fact.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and both parties reside within the Central District of California.

7. Venue is proper in the Eastern Division of this District because Plaintiff resides in Riverside County.

# FACTUAL ALLEGATIONS

## A. The Fifteen-Year Professional Relationship

8. Beginning approximately in 2009, Plaintiff and Defendant entered into a professional working relationship in which Plaintiff served as music producer, audio engineer, composer, and mixing/mastering engineer for Defendant's musical recordings.

9. Over the course of approximately fifteen years, Plaintiff produced, co-wrote, engineered, mixed, and/or mastered at least 34 songs for Defendant at The OC Recording Company.

10. Throughout the relationship, the parties operated under oral agreements regarding crediting and compensation. There was never a written agreement between the parties at any time.

11. The absence of a written agreement is legally significant: under 17 U.S.C. § 101, a "work made for hire" requiring transfer of copyright ownership must be memorialized in a written instrument signed by both parties. No such instrument exists.

## B. Systematic Registration Fraud

12. Defendant registered approximately 100 works with ASCAP and BMI, the two major performing rights organizations in the United States.

13. Of those 100 registered works, Defendant listed himself as the sole writer on 71 of them.

14. Defendant engaged in the same pattern with SoundExchange, the organization that collects digital performance royalties for sound recordings. As of March 8, 2026, Defendant has 118 sound recordings registered with SoundExchange. Of those 118 registrations, Plaintiff is credited on exactly one—Bitcoin. Kira Fulks, a co-writer and performing artist on Bitcoin, is credited on none. Songs that Plaintiff produced, including Hey, 21 Questions, Eazy Money, Better Days, 11 Eleven, and Put Me Down, are registered solely under Defendant's name with no credit to Plaintiff as producer or contributor.

15. Despite Plaintiff's documented contributions to at least 34 of those works—evidenced by timestamped Pro Tools session files, email correspondence, and text messages—Plaintiff is credited on exactly one song: "Bitcoin."

16. Even on Bitcoin—a song Plaintiff composed entirely, produced, engineered, mixed, mastered, and for which Plaintiff created the lyric video and paid the $65 copyright registration fee—Defendant collected virtually all revenue. Plaintiff and Kira Fulks are co-writers and performing artists on Bitcoin. Defendant persuaded them to release through his platform, promising it would be the best distribution channel. Instead, Plaintiff's Spotify artist account was improperly linked, creating a duplicate profile; Defendant's name was given precedence on the title cover; and Kira Fulks' and Plaintiff's accounts were switched. Despite approximately 5,600 YouTube views, Defendant paid Plaintiff approximately $50 total across all songs Plaintiff produced—the only payment ever received in fifteen years of collaboration.

### C. Four Years of Broken Promises (2021–2024)

17. In May 2021, Defendant acknowledged Plaintiff's contributions in writing via text message: "I have no problem giving you credits for your work."

18. In August 2021, Defendant requested Plaintiff's ASCAP information and confirmed via text message: "Giving you some co producer credits." Nothing was registered.

19. Between May and August 2023, Plaintiff discovered Defendant had still not registered Plaintiff on any works despite two years of promises. Defendant responded via text message: "I definitely wanna give you your dues." Over the following three months, Defendant claimed BMI would not allow updates and that he had "sent multiple emails." Nothing was corrected.

20. On January 25, 2024, Defendant asked Plaintiff to send the instrumental for "Put Me Down" because Defendant had placed it in films for sync revenue. Plaintiff sent the instrumental and asked to be included on co-production. Defendant replied via text message: "Will do!" Defendant never credited Plaintiff.

21. On February 21, 2024, Plaintiff and Defendant registered Bitcoin together. Defendant confirmed equal splits in writing via text message: "33 each from writer and publisher correct?" Plaintiff paid the $65 copyright registration fee. Defendant then collected virtually all revenue.

22. On May 31, 2024, Plaintiff confronted Defendant about missing production credits. Defendant's response via text message: "As far as BMI which songs?"—feigning ignorance after fifteen years of collaboration.

23. On June 3-4, 2024, Plaintiff formally notified Defendant of systemic crediting and BMI registration failures and demanded five specific corrections. Defendant agreed in writing via text message: "That sounds good to me brother."

24. Despite these repeated written acknowledgments and promises spanning four years, Defendant failed to correct a single registration.

### D. The Colorblind Production (February–June 2024)

25. Between February 19 and June 7, 2024, Plaintiff devoted approximately 120 documented hours across 28 recording sessions to the production of a song titled "Colorblind" at The OC Recording Company.

26. Plaintiff's contributions to Colorblind include: original musical composition, all instrumental music, harmonic structure, arrangements, the hook/chorus melody, Plaintiff's own rap verse and lyrics, and complete sound recording production including engineering, mixing, and mastering.

27. Contributing artist Niquio Balcobero performed piano parts on top of Plaintiff's original composition, under Plaintiff's creative direction.

28. Aside from Niquio's piano and the vocal performances/lyrics contributed by Defendant and other artists, every note of music on the recording was composed and performed by Plaintiff.

29. Throughout production, Plaintiff sent regular progress updates to Defendant and all contributing artists documenting his creative direction. Defendant received and responded to these updates without objection, actively participating in creative review by providing feedback on mixes and arrangements via text message and live stream.

30. Contributing artist Whosoever South directed creative feedback to Plaintiff as the decision-maker, calling the record "EPIC" and writing: "this is your baby."

31. Plaintiff covered all studio costs for the Colorblind production. Defendant paid nothing.

### E. Defendant's Sabotage (July 2024)

32. On or about July 12, 2024, after Plaintiff had been working on Colorblind for months

with Defendant's written and verbal agreement, Defendant objected to the release of Colorblind under The OC Recording Company, refused to provide artist contact information, and expressly stated his intent to re-record the song without Plaintiff's contributions.

33. Defendant turned the contributing artists against the project, causing them to reject the release through Plaintiff's label.

34. On or about July 18-19, 2024, Plaintiff contacted the contributing artists directly because Defendant refused to provide their information. Contributing artist Aki Starr responded: "Who is this?"—an artist on a song Plaintiff produced did not even know Plaintiff's name, demonstrating the extent to which Defendant had excluded Plaintiff from credit and recognition.

35. On July 25, 2024, Plaintiff issued a formal cease and desist letter prohibiting unauthorized use of Plaintiff's compositions, recordings, name, and likeness, and demanding corrected BMI split sheets by August 9, 2024.

### F. Defendant's Admissions and Continued Breaches (August–September 2024)

36. On August 23, 2024, Plaintiff demanded removal of all co-authored works from distribution, documented unauthorized and unequal splits, and demanded payment for Colorblind. Defendant implied Plaintiff's contributions were work-for-hire. No written work-for-hire agreement exists.

37. Defendant falsely claimed to have paid "six figures" for Plaintiff's studio services. Plaintiff's Chase Bank records show Defendant paid $19,600 total over two years. This misrepresentation was made to justify Defendant's refusal to compensate Plaintiff and to create a false narrative of adequate payment.

38. On August 30, 2024, Defendant admitted fault via text message: "for that not being done initially i apologize." Defendant claimed all songs had been removed from digital service providers. They had not.

39. On September 1, 2024, songs including Hey, 21 Questions, Eazy Money, and Pressure were still live on YouTube, Spotify, and Defendant's website despite Defendant's claims of removal.

40. On September 14, 2024, Defendant emailed BMI but submitted unequal splits: Better

1  Days at 75/25, 1111 at 75/25, Eazy Money at 50/25/25. Plaintiff flagged these immediately. They
2  remain uncorrected.

3      41. From September 2024 to present, Defendant has maintained silence. No payment has
4  been made. No registrations have been corrected. Defendant broke this silence not by complying
5  with Plaintiff's demands, but by recording an infringing derivative of Plaintiff's work.

6  **G. The Infringing "Colorblind" Version (January 2026)**

7      42. In or about January 2026, Defendant recorded and began publicly performing a new
8  version of "Colorblind" (hereinafter the "Infringing Version").

9      43. Plaintiff has obtained and analyzed the Infringing Version. The musical architecture of
10 Plaintiff's original work—including the compositional framework, harmonic structure, hook
11 melody, and overall sonic design—is present throughout the Infringing Version.

12     44. The Infringing Version is an unauthorized derivative work under 17 U.S.C. § 101.

13     45. Defendant had direct access to Plaintiff's original work—Defendant was present in the
14 studio during composition and received the completed recordings.

15     46. Defendant created the Infringing Version after receiving Plaintiff's cease and desist of
16 July 25, 2024, which expressly prohibited Defendant from using Plaintiff's contributions, music,
17 or any element of the Colorblind recordings in any new recording.

18     47. Defendant registered "COLOR BLIND" with BMI (ISWC: T3381370301, Work ID:
19 934342874) listing himself as the sole writer at 100% and Fatell Music Group as the sole
20 publisher at 100%. Defendant did not compose the music. Defendant did not write the melody.
21 Defendant did not create the arrangements. Plaintiff did.

22 **H. Copyright Registration**

23     48. Plaintiff has applied for United States Copyright Registration Case No. 1-
24 15103268391, filed February 19, 2026, which application is currently pending, for the musical
25 composition, arrangement, and sound recording of "Colorblind," encompassing all original
26 instrumental music, harmonic structure, arrangements, the hook/chorus melody, Plaintiff's rap
27 verse lyrics, and the complete sound recording production.

28

**I. Pre-Suit Demand**

49. On February 19, 2026, Plaintiff served Defendant with a formal demand letter via email and certified mail, demanding payment of $31,292.96, a full accounting, cessation of all infringing activity, and correction of all fraudulent registrations within fourteen days.

50. As of the date of filing this Complaint, Defendant has failed to comply with any of Plaintiff's demands.

## FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

(Against All Defendants)

51. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiff is the owner of a valid copyright in the musical composition and sound recording of "Colorblind," as evidenced by United States Copyright Registration Case No. 1-15103268391.

53. Defendant, without authorization or license from Plaintiff, has reproduced, distributed, publicly performed, and created a derivative work based upon Plaintiff's copyrighted work in violation of 17 U.S.C. §§ 106(1), (2), (3), and (6).

54. Defendant's infringement is willful. Defendant had actual knowledge of Plaintiff's copyright ownership, having been present during the creation of the work. Defendant received an express cease and desist letter on July 25, 2024, prohibiting the exact conduct Defendant subsequently engaged in. Defendant proceeded to create the Infringing Version in knowing and deliberate disregard of Plaintiff's rights.

55. Additionally, Defendant registered the work solely in his own name with BMI, claiming 100% authorship of a composition he did not create, constituting further willful infringement and fraudulent misrepresentation of copyright ownership.

56. As a direct and proximate result of Defendant's infringement, Plaintiff has suffered and continues to suffer irreparable harm and damages.

57. Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. § 502, statutory damages

1 of up to $150,000 per work for willful infringement pursuant to 17 U.S.C. § 504(c)(2), or
2 alternatively actual damages and Defendant's profits pursuant to 17 U.S.C. § 504(b),
3 impoundment and destruction of all infringing copies pursuant to 17 U.S.C. § 503, and full costs
4 and attorney's fees pursuant to 17 U.S.C. § 505.

**SECOND CAUSE OF ACTION**

**BREACH OF ORAL CONTRACT**

(Against All Defendants)

58. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

59. Plaintiff and Defendant entered into oral agreements whereby Defendant agreed to: (a) credit Plaintiff as co-writer and co-producer on songs Plaintiff contributed to; (b) register Plaintiff's contributions with ASCAP and/or BMI; (c) share royalties equally; and (d) compensate Plaintiff for studio production services.

60. These oral agreements are evidenced by multiple text messages in which Defendant confirmed credits, agreed to equal splits ("33 each from writer and publisher correct?"), and acknowledged Plaintiff's contributions ("That sounds good to me brother").

61. Plaintiff performed his obligations under the agreements by producing, composing, engineering, mixing, and mastering recordings for Defendant over fifteen years, including 120 hours of production on Colorblind and 40 hours on Bitcoin.

62. Defendant breached the agreements by: (a) failing to credit Plaintiff on any works except Bitcoin; (b) registering works solely in Defendant's name; (c) failing to share any royalties; (d) failing to compensate Plaintiff for Colorblind production; and (e) collecting all revenue from co-authored works.

63. As a direct and proximate result of Defendant's breach, Plaintiff has been damaged in an amount to be proven at trial but not less than $31,292.96.

# THIRD CAUSE OF ACTION

## FRAUD / INTENTIONAL MISREPRESENTATION

(Against All Defendants)

64. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

65. Defendant made the following material misrepresentations to Plaintiff: (a) "I have no problem giving you credits for your work" (May 2021); (b) "Giving you some co producer credits" (August 2021); (c) "I definitely wanna give you your dues" (May 2023); (d) "Will do!" regarding co-production credit on Put Me Down (January 2024); (e) "33 each from writer and publisher correct?" confirming equal splits on Bitcoin (February 2024); (f) "That sounds good to me brother" agreeing to correct all registrations (June 2024); and (g) claiming to have paid "six figures" for Plaintiff's studio services when Plaintiff's bank records show $19,600 total.

66. Each of these representations was false when made. Defendant never intended to credit Plaintiff or share royalties. Defendant's pattern of registering 71 out of 100 works solely in his own name while making repeated promises to Plaintiff demonstrates that these promises were made with the intent to deceive Plaintiff and to induce Plaintiff to continue providing services without compensation.

67. Plaintiff reasonably relied on Defendant's representations and continued to provide production services, including the 120-hour Colorblind production, in reliance on Defendant's promises.

68. Plaintiff did not discover the full extent of Defendant's fraudulent registration practices until reviewing Defendant's complete ASCAP/BMI catalog, at which point Plaintiff discovered he was credited on only one song out of approximately one hundred.

69. As a direct and proximate result of Defendant's fraud, Plaintiff has been damaged in an amount to be proven at trial but not less than $31,292.96.

70. Defendant's conduct was willful, oppressive, and malicious, entitling Plaintiff to punitive damages pursuant to Cal. Civ. Code § 3294.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

(Against All Defendants)

71. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

72. Plaintiff conferred substantial benefits on Defendant by producing, composing, engineering, mixing, and mastering at least 34 recordings, including 120 hours on Colorblind and 40 hours on Bitcoin.

73. Defendant was aware of and accepted these benefits.

74. Defendant has been unjustly enriched by retaining all royalties, streaming revenue, distribution income, sync licensing fees, and other income generated by works incorporating Plaintiff's contributions, while paying Plaintiff approximately $50 total across all works over fifteen years of collaboration.

75. It would be inequitable for Defendant to retain these benefits without compensating Plaintiff.

76. Plaintiff is entitled to restitution and disgorgement of all profits Defendant derived from Plaintiff's contributions, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200)

(Against All Defendants)

77. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

78. Defendant's conduct constitutes unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code § 17200 et seq., including but not limited to: (a) registering Plaintiff's creative works solely in Defendant's name; (b) collecting all royalties and revenue from joint works without accounting to or paying Plaintiff; (c) making repeated false promises to correct registrations; (d) upcharging Plaintiff's services to third parties

without Plaintiff's knowledge or consent; and (e) infringing Plaintiff's copyrights.

79. As a direct result of Defendant's unfair business practices, Plaintiff has suffered injury in fact and lost money or property.

80. Plaintiff is entitled to restitution and injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

### SIXTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
(Against All Defendants)

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

82. By virtue of the parties' fifteen-year professional relationship, Defendant's role as the sole registrant and distributor of joint works, and Defendant's control over all revenue streams, Defendant owed Plaintiff fiduciary duties of honesty, transparency, and fair dealing in all financial matters related to their collaborative works.

83. Defendant breached these fiduciary duties by: (a) registering joint works solely in his own name; (b) collecting and retaining all royalties without disclosure or accounting; (c) making false representations regarding crediting and registration; (d) upcharging Plaintiff's services to third parties and retaining the profits; and (e) exercising unilateral control over the distribution and monetization of joint works to Plaintiff's exclusion.

84. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff has been damaged in an amount to be proven at trial.

85. Defendant's conduct was willful, oppressive, and malicious, entitling Plaintiff to punitive damages pursuant to Cal. Civ. Code § 3294.

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(Against All Defendants)

86. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

87. Plaintiff had existing and prospective economic relationships with digital streaming platforms, music distributors, sync licensing agencies, and music consumers through his catalog of original compositions and productions.

88. Defendant knew of these relationships and Plaintiff's economic expectancy in receiving royalties and recognition for his creative works.

89. Defendant intentionally interfered with these relationships by: (a) registering Plaintiff's works solely in Defendant's name, preventing Plaintiff from receiving royalty payments; (b) blocking the release of Colorblind through Plaintiff's label; (c) turning contributing artists against Plaintiff; and (d) releasing an infringing derivative work that competes directly with Plaintiff's original composition.

90. Defendant's conduct was independently wrongful, constituting copyright infringement, fraud, and breach of fiduciary duty.

91. As a direct and proximate result of Defendant's interference, Plaintiff has been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

## ACCOUNTING

(Against All Defendants)

92. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

93. Defendant has received and retained royalties, streaming revenue, sync licensing fees, distribution income, and other compensation derived from works incorporating Plaintiff's creative

contributions.

94. The exact amount of such revenue is unknown to Plaintiff and cannot be determined without an accounting of Defendant's records.

95. Plaintiff is entitled to a full accounting of all income Defendant has received from works to which Plaintiff contributed, including but not limited to BMI/ASCAP royalties, digital streaming revenue, sync licensing fees, distribution income, and any other compensation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant as follows:

**On the First Cause of Action (Copyright Infringement):**

    a. Statutory damages of up to $150,000 per work for willful infringement pursuant to 17 U.S.C. § 504(c)(2), or alternatively actual damages and Defendant's profits pursuant to 17 U.S.C. § 504(b);

    b. A permanent injunction pursuant to 17 U.S.C. § 502 restraining Defendant from reproducing, distributing, publicly performing, or creating derivative works based on Plaintiff's copyrighted compositions and recordings;

    c. Impoundment of infringing copies pursuant to 17 U.S.C. § 503;

    d. Full costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505;

**On the Second Through Eighth Causes of Action:**

    e. Compensatory damages to be proven at trial but not less than $31,292.96;

    f. Punitive damages pursuant to Cal. Civ. Code § 3294;

    g. Disgorgement of all profits Defendant derived from Plaintiff's contributions;

    h. An accounting of all income Defendant received from Plaintiff's contributions;

    i. An order directing Defendant to correct all ASCAP and BMI registrations to reflect Plaintiff's co-authorship;

    j. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

    k. Costs of suit incurred herein;

l. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: March 9, 2026

**ASAF FULKS LAW**

By: _____*Asaf Fulks*_____

Asaf Fulks, Esq. (SBN 343622)

Attorney for Plaintiff ASAF FULKS