Asaf Fulks (SBN 343622)
**ASAF FULKS LAW**
24433 Citrus Hill Rd.
Wildomar, CA 92595
Tel: (323) 244-9794
Email: asaf@asaffulkslaw.com

Attorney for Plaintiff ASAF FULKS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| ASAF FULKS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND JOHN BALDONADO JR., an individual, d/b/a FATELL and FATELL MUSIC GROUP; and FRENZEE BROADCASTING, a California Corporation (Entity No. 4772622),<br><br>Defendants. | Case No.: 5:26-cv-01081-JGB-ACCV<br><br>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS [FED. R. CIV. P. 55(b)(2); L.R. 55-1]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing: Monday, August 24, 2026, 9:00 a.m. Courtroom 1** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES:

PLEASE TAKE NOTICE that on **Monday, August 24, 2026** at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the George E. Brown, Jr. Federal Building, 3470 Twelfth Street, Riverside, California, before the Honorable Jesus G. Bernal, Plaintiff Asaf Fulks will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1, for entry of default judgment against Defendants Raymond John Baldonado, Jr. (individually and d/b/a Fatell and Fatell Music Group) and Frenzee Broadcasting, a California corporation, and each of them.

1

**MOTION FOR DEFAULT JUDGMENT**

This Motion is made on the grounds that, after the Court accepted the operative First Amended Complaint [Dkt. 17], Plaintiff personally served it, together with the Summonses, on both Defendants on June 28, 2026 — service the Court deemed complete as of that date [Dkt. 20] — and the Clerk entered their **renewed default on the First Amended Complaint on July 22, 2026 [Dkt. 25]** (the Clerk having previously entered their default on the original Complaint on June 18, 2026 [Dkt. 15]); that the well-pleaded allegations of the **First Amended Complaint** establish each Defendant's liability on all eight claims for relief; that neither Defendant is an infant, an incompetent person, or in the military service of the United States; and that Plaintiff is entitled to the monetary, injunctive, and equitable relief set forth below and in the accompanying [Proposed] Default Judgment.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Asaf Fulks and exhibits thereto, the [Proposed] Default Judgment, the records and files in this action, and any argument the Court may receive.

Dated: July 24, 2026                                  Respectfully submitted,


*Asaf Fulks*
Asaf Fulks, Esq. (SBN 343622)
Plaintiff, Pro Se

2
**MOTION FOR DEFAULT JUDGMENT**

# TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION**..........................................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**...............................................7

   I.  INTRODUCTION.................................................................................................7

   II.  STATEMENT OF FACTS...................................................................................8

   III.  PROCEDURAL HISTORY...............................................................................10

   IV.  LEGAL STANDARD.......................................................................................11

   V.  ARGUMENT....................................................................................................11

      A.  Jurisdiction is proper and service was valid...............................................11

      B.  The Eitel factors favor default judgment....................................................12

      C.  The well-pleaded Complaint establishes liability on all eight claims..................................13

         1.  Copyright infringement of the Composition (17 U.S.C. § 501).....................................13

         2.  Breach of oral contract..................................................................17

         3.  Fraud / intentional misrepresentation.................................................18

         4.  Unjust enrichment / restitution........................................................18

         5.  Unfair competition (Cal. Bus. & Prof. Code § 17200)..................................19

         6.  Breach of fiduciary duty.................................................................19

         7.  Intentional interference with prospective economic advantage..........................19

         8.  Accounting...............................................................................20

         9.  Each Defendant's liability (Baldonado and Frenzee)...................................20

      D.  Damages and monetary relief....................................................................22

      E.  Injunctive and equitable relief..................................................................27

      F.  Conclusion...............................................................................................28

**CERTIFICATE OF COMPLIANCE**...............................................................28

**MOTION FOR DEFAULT JUDGMENT**

# TABLE OF AUTHORITIES

## CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)......................................................20

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000)..............................................................16

*Adams v. Murakami*, 54 Cal. 3d 105 (1991)....................................................................23

*AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F.4th 552 (9th Cir. 2025)...................................24

*Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175 (9th Cir. 1990)................................................26

*Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226 (1995)....................................................23

*Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008)..................................................16

*Automotriz del Golfo de Cal. v. Resnick*, 47 Cal. 2d 792 (1957).....................................................20

*Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996)....................................................20

*Cummings Med. Corp. v. Occupational Med. Corp.*, 10 Cal. App. 4th 1291 (1992)...........................24

*Davis v. Metro Prods., Inc.*, 885 F.2d 515 (9th Cir. 1989)........................................................20

*DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616 (7th Cir. 2013)......................................15

*Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008)............................................17

*DIRECTV, Inc. v. Huynh*, 503 F.3d 847 (9th Cir. 2007).........................................................11

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)..............................................................13, 17, 27

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990).....................................................16

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986)..........................................................11, 12, 17

*Fernandes v. Singh*, 16 Cal. App. 5th 932 (2017)...................................................................24

*Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011)............................................13

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019)................................12

*Geddes v. United Fin. Grp.*, 559 F.2d 557 (9th Cir. 1977)........................................................8

*Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1 (2003).......................................................17

*Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323 (2020)............................................................18

*Kay v. Ehrler*, 499 U.S. 432 (1991)...............................................................................27

*Kenly v. Ukegawa*, 16 Cal. App. 4th 49 (1993)....................................................................23

*Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471 (1996)................................................................18

*Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290 (1985)...............................................................21

*Michelson v. Hamada*, 29 Cal. App. 4th 1566 (1994).............................................................26

*Mike Davidov Co. v. Issod*, 78 Cal. App. 4th 597 (2000).........................................................24

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007 (9th Cir. 1994).....................................22, 25

*Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984).....................................................................16, 19

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002).......................................11, 13

**MOTION FOR DEFAULT JUDGMENT**

*Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011)...............................................................13

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004)...........................................17, 25

*Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510 (2008)..........................................21

*Richardson v. Kharbouch*, No. 24-1119 (7th Cir. Oct. 16, 2025)...........................................................16

*Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334 (2019)................................................................26

*Robert L. Cloud & Assocs. v. Mikesell*, 69 Cal. App. 4th 1141 (1999)....................................................23

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003)......................................................................................14

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)...............................................20

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).........................................................23

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).....................................................................................14

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987)........................................................8, 11

*Trope v. Katz*, 11 Cal. 4th 274 (1995).....................................................................................................27

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022)..................................................15

*VHT, Inc. v. Zillow Grp.*, 918 F.3d 723 (9th Cir. 2019)...........................................................................20

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016)..................................................................16

**FEDERAL STATUTES**

17 U.S.C. § 101...................................................................................................................................8, 16

17 U.S.C. § 106........................................................................................................................................16

17 U.S.C. § 114(b)...................................................................................................................................16

17 U.S.C. § 115........................................................................................................................................28

17 U.S.C. § 408(c)....................................................................................................................................14

17 U.S.C. § 410(c)............................................................................................................................. 14, 15

17 U.S.C. § 411.............................................................................................................................10, 12, 15

17 U.S.C. § 412....................................................................................................................... 15, 17, 24, 25

17 U.S.C. § 501........................................................................................................................................13

17 U.S.C. § 502...................................................................................................................................17, 27

17 U.S.C. § 503...................................................................................................................................17, 27

17 U.S.C. § 504.....................................................................................................................................passim

17 U.S.C. § 505........................................................................................................................................27

28 U.S.C. § 1391(b).................................................................................................................................. 11

28 U.S.C. §§ 1331, 1338(a), 1367........................................................................................................... 11

28 U.S.C. § 1920......................................................................................................................................26

28 U.S.C. § 1961......................................................................................................................................26

**MOTION FOR DEFAULT JUDGMENT**

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200, 17203.................................................................................19, 23

Cal. Civ. Code § 1717...........................................................................................................27

Cal. Civ. Code § 3288......................................................................................................25, 26

Cal. Civ. Code § 3289...........................................................................................................25

Cal. Civ. Code § 3294..............................................................................................18, 19, 23, 24

Cal. Civ. Code § 3295...........................................................................................................24

Cal. Civ. Code § 3300...........................................................................................................22

Cal. Civ. Code § 3333...........................................................................................................22

Cal. Civ. Code § 3343...........................................................................................................22

Cal. Civ. Proc. Code § 338(d).............................................................................................18, 22

Cal. Civ. Proc. Code § 415.50.............................................................................................10, 12

Cal. Corp. Code §§ 16202, 16404.............................................................................................19

Cal. Gov. Code § 6064.......................................................................................................10, 12

**RULES**

Fed. R. Civ. P. 4.................................................................................................................12

Fed. R. Civ. P. 6(a).............................................................................................................11

Fed. R. Civ. P. 12(a).......................................................................................................10, 11

Fed. R. Civ. P. 54(c)....................................................................................................21, 24, 27

Fed. R. Civ. P. 55...............................................................................................................1, 11

Fed. R. Civ. P. 65(d)............................................................................................................27

C.D. Cal. L.R. 7-3...............................................................................................................11

C.D. Cal. L.R. 11-6.1...........................................................................................................28

C.D. Cal. L.R. 55-1...............................................................................................................1

C.D. Cal. L.R. 55-2.........................................................................................................11, 24

**CONSTITUTIONAL PROVISIONS**

Cal. Const., art. XV, § 1........................................................................................................25

**REGULATIONS AND ADMINISTRATIVE MATERIALS**

37 C.F.R. § 202.3(b)........................................................................................................14, 15

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices (3d ed.)..............................15

**MOTION FOR DEFAULT JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For fifteen years Plaintiff Asaf Fulks — a licensed California attorney and professional music producer — composed, produced, engineered, mixed, and/or mastered at least thirty-four (34) musical works for Defendant Raymond John Baldonado, Jr. ("Fatell"). Over those years Defendant repeatedly promised, in writing, to credit Plaintiff and share royalties, and repeatedly failed to do so — registering roughly 100 works with the performing-rights organizations and naming himself sole writer on 71 of them, while paying Plaintiff approximately $50 in total in royalty and backend revenue on those works. After Plaintiff issued a cease-and-desist in July 2024, Defendant escalated: he recorded and publicly performed an unauthorized derivative of Plaintiff's original composition "Colorblind," and — **as recently as May 2026, after this action was filed and served** — has continued to publicly perform and promote that infringing work, presenting "Colorblind" as a track on a forthcoming album he has not yet released.

Defendants were served by Court-ordered publication and email, then personally served with the operative First Amended Complaint — service this Court deemed complete as of June 28, 2026 [Dkt. 20] — failed to respond, and the Clerk has twice entered their default. The well-pleaded operative First Amended Complaint establishes liability on all eight claims. Plaintiff respectfully requests entry of default judgment awarding **statutory damages of $150,000 for the willful infringement of Plaintiff's registered musical composition** (17 U.S.C. § 504(c)(2)), a single documented compensatory recovery on the state-law claims, a permanent injunction, impoundment, correction of the fraudulent registrations, an accounting, punitive damages at a 1:1 ratio to the compensatory award, interest, and costs, as set forth below.

**MOTION FOR DEFAULT JUDGMENT**

## II. STATEMENT OF FACTS

On a motion for default judgment the Court takes the Complaint's well-pleaded factual allegations as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The following facts are therefore established (FAC ¶¶ cited):

• **The 15-year relationship; no written agreement.** Beginning in 2009, Plaintiff served as producer/engineer/composer for Defendant's recordings; the parties operated under oral agreements only — no written work-made-for-hire instrument ever existed (FAC ¶¶ 8–11). Under 17 U.S.C. § 101, absent a signed writing, Plaintiff retained authorship/co-ownership of his contributions.

• **Systematic non-credit and fraudulent registration.** Defendant registered ~100 works with ASCAP/BMI, naming himself sole writer on 71; on SoundExchange Plaintiff is credited on 1 of 118 recordings (FAC ¶¶ 12–16). Plaintiff was paid ~$50 total in royalty and backend revenue over 15 years (FAC ¶ 16) despite Defendant's claim of paying "six figures" for Plaintiff's studio services (FAC ¶ 37); separately, Chase records show ~$19,660 in deposits for general studio and production work over a two-year subset (Ex. E; Fulks Decl. ¶ 10).

• **Four years of written promises (2021–2024).** Defendant acknowledged Plaintiff's work and promised credits/splits in writing — e.g., "I have no problem giving you credits for your work" (2021); "Giving you some co producer credits" (2021); and "33 each from writer and publisher correct?" (2024) — and admitted fault: "for that not being done initially i apologize" (8/30/2024) (FAC ¶¶ 17–22, 24, 36–40).

**MOTION FOR DEFAULT JUDGMENT**

• **Colorblind.** Between Feb 19 and June 7, 2024, Plaintiff devoted ~120 hours across 28 sessions to produce "Colorblind," composing all instrumental music, harmonic structure, arrangements, the hook/chorus melody, his own verse/lyrics, and the complete sound-recording production; Plaintiff covered all studio costs (FAC ¶¶ 25–31). The **registered Composition** on which Count 1 rests comprises the instrumental music, harmonic structure, and chord progression Plaintiff alone composed; the arrangement (co-credited on the certificate) and the hook/chorus melody (separately registered, Reg. No. PAu 4-312-843, effective July 6, 2026; Ex. M) are **not** part of the registered Composition (Part C.1).

• **Sabotage and willful infringement.** After Plaintiff's July 25, 2024 cease-and-desist, Defendant re-recorded Plaintiff's composition without authorization: **in or about January 2026 he recorded and began publicly performing an unauthorized derivative of Colorblind** that recreates the musical base of Plaintiff's composition — the instrumental music, harmonic structure, and chord progression embodied in Plaintiff's registered "Color of the Heart" — and additionally reproduces the chorus "Hook" melody Plaintiff composed for the original Colorblind, while registering "COLOR BLIND" with BMI in his own name (Work ID 934342874) (FAC ¶¶ 32–35, 42–47).

• **Continuing post-suit conduct (willfulness).** After this action was filed and served, Defendant has continued to publicly perform and promote the infringing work — including a May 1, 2026 broadcast interview in which he identifies "Colorblind" as a track on his forthcoming album "True Story," claims it as his own, and performs (raps) its lyrics a cappella on air, stating that the album is not yet released — his continued public exploitation of the infringing work reflecting a disregard of Plaintiff's rights. Defendant also remains an active, ongoing commercial music enterprise, publishing a new official music video on May 29, 2026 and promoting a June 6, 2026 public event tied to that forthcoming album — evidence of his present ability to pay. (Fulks Decl. ¶ 12; Exs. I, J.)

**MOTION FOR DEFAULT JUDGMENT**

• **Pre-suit demand.** On Feb 19, 2026, Plaintiff served a demand for $31,292.96, a full accounting, and cessation; Defendant did not comply (FAC ¶¶ 49–50).

### III. PROCEDURAL HISTORY

Plaintiff filed the Complaint on March 9, 2026 [Dkt. 1], asserting eight claims. After diligent but unsuccessful personal-service attempts, the Court authorized service by publication and email [Dkt. 12, 4/22/2026]. Plaintiff effected service and filed proof on May 19, 2026 [Dkt. 13]; service was deemed complete May 26, 2026 (Cal. Gov. Code § 6064; Cal. Civ. Proc. Code § 415.50(c)). Defendants' responses were due June 16, 2026 (Fed. R. Civ. P. 12(a)(1)(A)(i)); none was filed. Plaintiff requested entry of default on June 17, 2026 [Dkt. 14], and the Clerk entered the default of both Defendants on **June 18, 2026 [Dkt. 15]**. Neither Defendant has appeared. Plaintiff's musical Composition was registered **before** this action — U.S. Copyright Reg. No. **SRu 1-589-438** ("Color of the Heart"), effective **September 26, 2024** (Ex. **A**) — satisfying 17 U.S.C. § 411(a) directly. On June 22, 2026, Plaintiff moved for leave to file a First Amended Complaint pleading that issued registration [Dkt. 16]. On June 23, 2026, the Court granted leave, accepted the First Amended Complaint as the operative pleading, and directed that it be re-served [Dkt. 17]; Plaintiff filed the First Amended Complaint on June 25, 2026 [Dkt. 18]. On June 28, 2026, a registered process server personally served Defendant Baldonado — individually and as the designated agent for service of process for Frenzee Broadcasting — with the First Amended Complaint and the Summonses [Dkt. Nos. 9, 9-1] at Defendant's public performance in Los Angeles, and Plaintiff transmitted the same papers to Defendants' two court-approved email addresses the same day; proof of that service is on file [Dkt. 19-3]. By Order of July 9, 2026, the Court granted Plaintiff's ex parte application [Dkt. 19], **deemed service of the First Amended Complaint complete, relieved Plaintiff of further service by publication, and directed that all future service in this case be made by email** to the two addresses in the Service Order [Dkt. 20]. Defendants' responses

**MOTION FOR DEFAULT JUDGMENT**

to the First Amended Complaint were due July 20, 2026 (Fed. R. Civ. P. 12(a)(1)(A)(i), 6(a)(1)(C)); none was filed, and on **July 22, 2026**, on Plaintiff's renewed Request [Dkt. 21], the Clerk entered the renewed default of both Defendants on the First Amended Complaint [Dkt. **25**]. This Motion is brought on that operative pleading and that renewed entry of default. **Procedural notes:** L.R. 7-3's pre-filing conference requirement is inapplicable — Defendants failed to appear and have no counsel of record; and because the damages are unliquidated, Plaintiff serves this Motion and a statement of the amounts sought on Defendants at their two authorized email addresses — the method the Court has directed for all service in this case [Dkt. 20] (L.R. 55-2; Fed. R. Civ. P. 55(b)(2) appearance-based notice is not owed).

## IV. LEGAL STANDARD

After the Clerk enters default, the Court may enter default judgment under Rule 55(b)(2). The defaulting party's liability is established by its default; the Court accepts the well-pleaded factual allegations as true, except those relating to damages, which must be proven. *TeleVideo*, 826 F.2d at 917–18; *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 851, 854 (9th Cir. 2007). Whether to enter default judgment is discretionary, guided by the seven *Eitel* factors. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174–77 (C.D. Cal. 2002).

## V. ARGUMENT

### A. Jurisdiction is proper and service was valid.

The Court has federal-question and copyright jurisdiction over Count 1 (28 U.S.C. §§ 1331, 1338(a)) and supplemental jurisdiction over the state claims (§ 1367). Venue is proper (§ 1391(b)).

**MOTION FOR DEFAULT JUDGMENT**

Defendants were served as authorized by Dkt. 12 (publication + email), with service deemed complete May 26, 2026 (Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A); Cal. Civ. Proc. Code § 415.50; Cal. Gov. Code § 6064); proof is on file [Dkt. 13]. The operative First Amended Complaint was thereafter **personally served** on both Defendants — on Baldonado individually and as the designated agent for service of process for Frenzee Broadcasting (Fed. R. Civ. P. 4(e)(2), 4(h)(1)(B)) — on June 28, 2026, and served by email the same day; the Court deemed that service complete as of June 28, 2026 [Dkt. 20; proof at Dkt. 19-3]; neither Defendant responded; and the Clerk entered their renewed default [Dkt. **25**] — so personal jurisdiction is perfected as to the very pleading on which this Motion is brought. The § 411(a) registration prerequisite is satisfied **directly**: Plaintiff's Composition was registered **before** this action — Reg. No. **SRu 1-589-438**, effective **September 26, 2024** (Ex. **A**) — as pleaded in the operative First Amended Complaint. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019) (registration "made" when the Register acts), is satisfied on the face of the record; no post-filing cure is required.

### B. The Eitel factors favor default judgment.

**(1) Prejudice to Plaintiff** — without judgment Plaintiff has no remedy while Defendant continues to exploit the infringing composition and the uncredited catalog. **(2) Merits of the claims** and **(3) sufficiency of the Complaint** — each claim is well-pleaded with documentary support (Part C); the Court already found a sufficient basis to authorize alternative service [Dkt. 12]. **(4) Sum of money at stake** — proportional to the willful infringement of a registered work and to fifteen years of uncompensated work and admitted misconduct; Plaintiff seeks statutory damages within the § 504(c)(2) willful range (a Congressionally-fixed remedy), a single documented compensatory recovery of $30,141.95 (tied to the itemized February 19, 2026 demand, its embedded interest conservatively recomputed at the 7% fraud rate, Part D), a fixed punitive award at a conservative 1:1 ratio on the admitted four-year fraud, and equitable relief — each supported

**MOTION FOR DEFAULT JUDGMENT**

by the documentary record and entered as a **final** judgment, not a speculative or open-ended one (Part D). **(5) No genuine dispute of material fact** — the facts are established by Defendant's own writings and admissions, bank/registration records, and recorded public statements. **(6) No excusable neglect** — Defendants evaded personal service (the Burbank studio was vacated within 15 days of filing), had email notice, kept their mailboxes over-quota, and, when a registered process server finally confronted Baldonado at his June 28, 2026 public performance, he falsely denied being "Fatell" and refused the papers [Dkt. 19-3]; Defendants never appeared and have continued public commercial activity throughout — willful avoidance. **(7) Policy favoring merits decisions** weighs slightly against but cannot save a defaulting, evading party. *PepsiCo*, 238 F. Supp. 2d at 1177. **Six of the seven factors favor judgment.**

The permanent injunction is independently supported by the four *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) factors (applied to copyright in *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 995–98 (9th Cir. 2011), and *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980–82 (9th Cir. 2011)): irreparable harm (ongoing, knowing exploitation of Plaintiff's composition), an inadequate remedy at law, the balance of hardships, and the public interest in enforcing valid copyrights.

### C. The well-pleaded Complaint establishes liability on all eight claims.

**1.  Copyright infringement of the COMPOSITION (17 U.S.C. § 501) (FAC ¶¶ 25–35, 42–57).** Plaintiff is the **sole author** of the musical **Composition** registered as "Color of the Heart" — its instrumental music, harmonic structure, and chord progression — which he alone composed and which the certificate credits to him alone as the **"Music composition"** (FAC ¶¶ 26–28, 48). (Plaintiff also composed the chorus "Hook" melody for the original "Colorblind"; that Hook — which Defendant likewise copied — is separately registered (Reg. No. PAu 4-312-843, effective

**MOTION FOR DEFAULT JUDGMENT**

July 6, 2026; Ex. M) and is **not** part of the registered "Color of the Heart" Composition on which Count 1 rests. It is referenced only as evidence of the wholesale, deliberate nature of the copying.) Plaintiff registered the Composition with the U.S. Copyright Office — **Reg. No. SRu 1-589-438** ("Color of the Heart"), effective **September 26, 2024** (Ex. A). On the certificate, Plaintiff is credited with the sound recording, the **Music composition**, arrangement, music production, audio engineering, lyrics, and performance (Ex. A; Decl. ¶ 14; FAC ¶ 48); of the nine listed authors, **Plaintiff alone is credited with the "Music composition,"** and **Plaintiff is the sole copyright claimant** of record. The protected expression Plaintiff sues upon lies in his **original selection and combination** of the Composition's musical elements — its instrumental music, harmonic structure, and chord progression — which is copyrightable even where the individual building blocks, viewed in isolation, are not. *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("A combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."); *Swirsky v. Carey*, 376 F.3d 841, 848–49 (9th Cir. 2004) (applying that principle to the elements of a musical composition). On this unopposed default that protected combination, and its validity, are established by the § 410(c) presumption (below) and the well-pleaded allegations of copying, taken as true.

**The registration validly registers and protects the musical Composition — on the face of the certificate.** That the registration bears the "SR" (sound-recording) class prefix does not confine it to the sound recording. By statute, the "administrative classification of works **has no significance with respect to the subject matter of copyright or the exclusive rights** provided by this title." 17 U.S.C. § 408(c)(1). The Class-SR designation was, moreover, **mandatory**: the Register's regulations provide that "in any case where registration is sought for a work consisting of or **including a sound recording** in which copyright is claimed, the application **shall** be submitted for registration in Class SR." 37 C.F.R. § 202.3(b)(2)(iii). And a single such application registers

14

**MOTION FOR DEFAULT JUDGMENT**

**both** works — the Standard Application "may ... be used to register ... a sound recording **and** a ... musical work under paragraphs (b)(1)(iv)(A) through (C)." *Id.* § 202.3(b)(2)(i)(A). Those paragraphs provide that "[c]laims to copyright in literary, dramatic, and musical works embodied in phonorecords may also be registered in [Class SR]" whenever (A) "[r]egistration is sought on the same application for both" the musical work and the sound recording, (B) both "are embodied in the same phonorecord," and (C) "[t]he same claimant is seeking registration of both." *Id.* § 202.3(b)(1)(iv)(A)–(C). **All three conditions appear on the face of Exhibit A**: one application, one phonorecord ("Color of the Heart"), and one claimant (Plaintiff). The Copyright Office's Compendium states the identical rule and illustrates it with facts on all fours with Plaintiff's — co-creators who "co-own the copyright in both the song and the sound recording" register "both works ... with the same application" by naming the claimant "for the **music, lyrics, and sound recording**." Compendium of U.S. Copyright Office Practices §§ 802.8(A), 803.8(A) (3d ed. rev. 2021); *see id.* § 803.9(A).

The certificate is therefore **prima facie evidence of the validity of Plaintiff's copyright and of the facts stated in the certificate — including Plaintiff's "Music composition" authorship.** 17 U.S.C. § 410(c). The registration issued **before** this suit (§ 411(a) satisfied) and **before** the infringement (§ 412 — statutory damages available), and on this unopposed default the § 410(c) presumption stands **unrebutted**; no party has alleged any inaccuracy that could trigger a referral to the Register under 17 U.S.C. § 411(b)(2). The presence of nine authors of the **sound recording** is immaterial: the dual-registration rule turns on identity of the **claimant**, not of the authors (§ 202.3(b)(1)(iv)(C)), and Plaintiff is the sole author **and** sole claimant of the **Composition** he sues upon — a good-faith claimant designation that could not invalidate the registration in any event. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022); *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013).

**MOTION FOR DEFAULT JUDGMENT**

Defendant is not among the registration's authors and holds no ownership interest in the Composition. Defendant's lyric and vocal contributions — his own rap verse and the hook lyrics, neither of which is part of the registered Composition — do not make him a co-author of Plaintiff's music. Under *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000), Plaintiff is the author of the composition: he exercised control and superintendence over its creation — composing the instrumental music, harmonic structure, and chord progression that constitute the registered Composition, and directing the contributing artists (¶¶ 26, 29–30) — and the parties had no objective intent to be **co-authors** of Plaintiff's music (their dealings concerned credit and royalty *splits*, not Copyright-Act co-authorship). The co-owner-cannot-infringe rule of *Oddo v. Ries*, 743 F.2d 630, 632–33 (9th Cir. 1984), is therefore **inapplicable** — Defendant is not a co-owner of the music Plaintiff claims.

No work-made-for-hire transferred ownership: a specially-commissioned composition fits no § 101 category and no signed writing exists (¶¶ 11, 36). Any implied nonexclusive license to use Plaintiff's composition (*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)) was unsupported by consideration and thus revocable (*Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008)), and was **revoked** by the July 25, 2024 cease-and-desist and in any event **exceeded** by Defendant's later re-recording.

Defendant's ~January 2026 "new version" of "Colorblind," which he has continued to publicly perform and promote, **reproduces, distributes, publicly performs, and prepares an unauthorized derivative of Plaintiff's composition** (§ 106(1), (2), (3), and (4)). Because the new version is an independent fixation, it does not infringe Plaintiff's original *sound recording* (§ 114(b); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 883 (9th Cir. 2016)); but the same imitation that does **not** reach a sound recording "may be sufficient to show infringement of a **musical composition copyright**" (*Richardson v. Kharbouch*, No. 24-1119 (7th Cir. Oct. 16, 2025) —

16

**MOTION FOR DEFAULT JUDGMENT**

affirming judgment against a plaintiff who "did not obtain a musical composition copyright"), and the infringement here runs to Plaintiff's **Composition** — the instrumental music, harmonic structure, and chord progression that the new master necessarily embodies — for which Defendant holds no license, and from which Defendant's false 100% BMI registration of "COLOR BLIND" diverts the public-performance royalties. The infringement is willful (post-C&D, direct studio access, continuing post-suit), supporting punitive malice, irreparable harm, and the *Eitel* equities.

**Remedies — statutory damages (§ 504(c)).** Because Plaintiff's Composition was registered (eff. September 26, 2024) **before** Defendant commenced the infringement (~January 2026), § 412 does **not** bar statutory damages (*Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700–01 (9th Cir. 2008) — "commencement" is the first act of a continuing series). Plaintiff therefore **elects statutory damages** under § 504(c) for the willful infringement (Part D), together with a permanent injunction limited to the composition (§ 502; *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)), impoundment (§ 503), and costs. In the alternative — should the Court decline to award statutory damages — Plaintiff seeks actual damages and Defendant's profits attributable to the Colorblind composition (§ 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) — Plaintiff proves gross revenue + causal nexus, the burden then shifting to the defaulting Defendant), as determined through the accounting.

**2. Breach of oral contract (¶¶ 58–63).** Formation (offer/acceptance/consideration shown by the texts — e.g., Defendant's "33 each…correct?" confirming the agreed writer/publisher split), Plaintiff's full performance over 15 years, breach (no credit/registration/royalties), and damages of at least $30,141.95 under California law. Because Defendant's secret, unilateral registrations and royalty diversion were not reasonably discoverable until Plaintiff reviewed Defendant's complete ASCAP/BMI catalog (¶ 68), the limitations period ran from that discovery (delayed-discovery rule; *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 4–5 (2003)); the compensatory

17

**MOTION FOR DEFAULT JUDGMENT**

recovery is in any event elected on the fraud claim (Count 3), whose three-year, discovery-based period (Cal. Civ. Proc. Code § 338(d)) comfortably reaches the diversion.

**3.  Fraud / intentional misrepresentation (¶¶ 64–70).** The First Amended Complaint pleads, with particularity, multiple specific false promises to credit and pay Plaintiff (¶ 65), which Defendants' default admits and which were made without intent to perform. *(Plaintiff rests the fraud claim on the exhibit-verified representations pleaded in ¶ 65(a)–(e) and (g), and does not rely on ¶ 65(f)'s attribution of a June 2024 "That sounds good to me brother" reply — the Exhibit C transcript records that message as sent May 13, 2024, in a different context.)* Intent is shown by "something more than nonperformance" (*Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 481 (1996)): Defendant registered **71 of 100 works solely in his own name** *contemporaneously with* the promises (¶¶ 12–13), and took the benefit of Plaintiff's continued unpaid work (including the 120-hour Colorblind production) immediately after each promise while registering the next works in his own name. That intent is confirmed by Defendant's own later course of conduct: when confronted in 2024, he gave renewed written assurances that he would correct the credits — that his "team" would "look into" the omitted registrations and that he was "in the process of updating credits on applicable songs in the system" (Fulks Decl. ¶ 9; Ex. **C**) — yet corrected nothing, leaving Plaintiff to sue; a pattern of repeated assurances the promisor never honors is strong evidence the promises were made without intent to perform. The "six figures" misrepresentation (¶ 65(g)) is independently actionable as a false statement of **existing fact**, not a promise. Justifiable reliance (continued uncompensated production); damages. Defendant's conduct was willful, oppressive, and malicious — **punitive damages under Cal. Civ. Code § 3294.**

**4.  Unjust enrichment / restitution (¶¶ 71–76).** Pleaded **in the alternative** to the contract claim: California treats unjust enrichment as a quasi-contract/restitution principle rather than a standalone tort (*Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323 (2020)), available where the express

**MOTION FOR DEFAULT JUDGMENT**

oral contract's terms are informal/contested. Plaintiff conferred substantial benefits (34+ works); Defendant retained all royalty/streaming/sync income while paying ~$50; restitution is an alternative measure, not separately awarded if compensatory is awarded on Count 3 (no double recovery).

**5.  Unfair competition, Cal. Bus. & Prof. Code § 17200 (¶¶ 77–80).** Unlawful/unfair/fraudulent business practices (fraudulent sole registration; collecting royalties without accounting; infringing). Remedies limited to **restitution and injunctive relief** (§ 17203) — no damages.

**6.   Breach of fiduciary duty (¶¶ 81–85).** The duty arises from an **implied partnership/joint venture** as to the parties' jointly-released catalog — they agreed to share profits ("33 each from writer and publisher"), jointly exploited those works, and held an ownership interest in the catalog, triggering statutory partner duties of loyalty and good faith (Cal. Corp. Code §§ 16202 [profit-sharing creates a presumption of partnership], 16404). Defendant breached by registering the jointly-released works solely in his name, retaining all royalties without accounting, and self-dealing; damages + **punitive (§ 3294).** *(This partnership/joint-venture theory is expressly confined to the parties' shared exploitation of the jointly-released catalog and does not extend to the Colorblind Composition, of which Plaintiff is the sole author and owner under Reg. No. SRu 1-589-438 — so it does not implicate the co-ownership rule of* Oddo *as to Count 1. Count 6 is cumulative and non-load-bearing: the money judgment rests on Count 2/3 and the punitive award on Count 3; the implied-partnership theory is offered only if the Court reaches it, and is not relied upon for the judgment.)*

**7.   Intentional interference with prospective economic advantage (¶¶ 86–91).** Plaintiff's economic relationships/expectancies with streaming platforms, distributors, and sync agencies; Defendant's knowledge; **intentional, independently wrongful acts anchored on the fraud**

19

**MOTION FOR DEFAULT JUDGMENT**

**(Count 3)** — registering Plaintiff's works solely in Defendant's name to divert royalties, and turning the contributing artists against the project so that they rejected the release through Plaintiff's label (FAC ¶¶ 33, 89) — that disrupted at least that identified relationship; damages. Count 7 is cumulative and non-load-bearing (it does not independently drive the damages).

**8. Accounting (¶¶ 92–95).** The relationship and Defendant's exclusive control of income make the sums owed unascertainable without an accounting of all income from the identified works.

**9. Each Defendant's liability (Baldonado and Frenzee). Baldonado** is directly liable on every count as the individual who made the promises, committed the fraud, controlled the registrations/revenue, and — as the "guiding spirit" and "central figure" of the infringement (*Davis v. Metro Prods., Inc.*, 885 F.2d 515, 523 n.10 (9th Cir. 1989)) — personally directed and carried it out; an officer who authorizes, directs, or participates in the wrong is personally liable (*Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996)), and copyright is a strict-liability tort for which the corporate form is no shield. **Frenzee Broadcasting** is jointly liable on Counts 1, 4, 5, 7, and 8 by **vicarious** conduct — the continuing exploitation of the Infringing Version occurred "through channels operated by Frenzee Broadcasting" (FAC ¶ 54), including its own "Raymond Baldonado Jr. (FRENZEE BROADCASTING)" / @FrenzeeBroadcasting channel, and Frenzee has the right and ability to supervise that activity plus a direct financial interest in it (*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 745 (9th Cir. 2019)) — and on the state claims via **agency** (Baldonado conducts his music business "through Fatell Music Group and Frenzee Broadcasting," ¶ 3) and **forward alter ego** (Frenzee is Baldonado's instrumentality: he is its sole incorporator and agent (Ex. J); it is FTB-suspended; its address of record is his family's former home, since sold (Decl. ¶ 12); it maintains no genuine corporate office, yet continues to operate as one with Baldonado — *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538–39 (2000); *Automotriz del Golfo de Cal. v.*

20

**MOTION FOR DEFAULT JUDGMENT**

*Resnick*, 47 Cal. 2d 792, 796 (1957)), the inequitable-result prong satisfied by Defendant's bad-faith use of the entity to register Plaintiff's works, retain the revenue, and commercialize the infringement (*Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985)). The First Amended Complaint alleges that "[t]hrough these entities" — Fatell Music Group and Frenzee Broadcasting — Defendant "releases, distributes, and monetizes" the music (FAC ¶ 3), and that the continuing infringement occurred "through channels operated by Frenzee Broadcasting" (FAC ¶ 54); the further capitalization, commingling, and formality facts bearing on alter ego are not separately detailed in the pleadings but are confirmable through the ordered accounting, and Frenzee's Count 1 liability does not depend on them. The **oral contract (Count 2)** was Baldonado's personal promise and is asserted against **Baldonado alone** (reverse veil-piercing is unavailable against a corporation, *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510 (2008)). Frenzee's joint-and-several liability for the **statutory award on Count 1** rests on the well-pleaded, default-admitted allegation that the infringement was carried out "through channels operated by Frenzee Broadcasting" (FAC ¶ 54), supported by its vicarious liability (its right and ability to supervise that channel activity and its direct financial interest) with agency and alter ego as cumulative grounds; and **Plaintiff seeks no separate monetary award against Frenzee on the fraud (Count 3) or breach-of-fiduciary-duty (Count 6) claims**, which run against Baldonado. Because the operative First Amended Complaint expressly defines "Defendant" to mean "Defendants Baldonado and Frenzee Broadcasting . . . collectively" (FAC ¶ 3) and pleads Count 1 "Against All Defendants," the Prayer's request for § 504(c) statutory damages "against Defendant" demanded that award against **Frenzee** as well; entry of the statutory award against Frenzee is therefore neither different in kind from, nor in excess of the amount of, the relief the pleadings demanded (Fed. R. Civ. P. 54(c)).

**MOTION FOR DEFAULT JUDGMENT**

**D. Damages and monetary relief.**

• **Compensatory: $30,141.95 — against Defendant Baldonado.** Plaintiff's documented economic loss comprises **$19,857.21** for the reasonable value of Plaintiff's uncompensated studio-production and engineering labor on "Colorblind" ($18,000.00 plus embedded pre-judgment interest), **$6,828.49** for Bitcoin ($6,000.00 plus embedded pre-judgment interest), and **$3,456.25** in diverted royalties on the other co-written works, per the itemized February 19, 2026 demand with its embedded interest conservatively recomputed at the 7% fraud rate (Fulks Decl. ¶ 15; Ex. **D**; Interest, below). This recovery is for **the value of Plaintiff's uncompensated work and diverted royalties** — a **distinct injury** from the infringement of the Composition that the statutory award (below) compensates, and therefore not duplicative of it. The **$18,000.00 principal underlying the $19,857.21** is the reasonable value of the engineering and production labor Plaintiff invested in the original recording — labor Defendant accepted the benefit of and never paid for — a 2024 loss independent of any later act of infringement — and because Plaintiff **elects statutory damages in lieu of § 504(b) actual damages and profits**, the $150,000 award contains **no actual-loss component** capable of overlapping these unpaid-labor or royalty figures (cf. *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994)). The **$3,456.25** royalty component is a conservative estimate of diverted ASCAP/BMI performance and distribution royalties averaged across the thirty-four co-written works identified in the demand (Ex. **D** §§ III.C–III.D), and excludes "Colorblind"/"Color of the Heart." Plaintiff **elects this recovery on the fraud claim (Count 3)** — whose three-year, discovery-based limitations period (Cal. Civ. Proc. Code § 338(d)) reaches the secret royalty diversion (¶ 68) — and, **alternatively and for the same injury, on the unjust-enrichment (Count 4) and breach-of-oral-contract (Count 2) claims** (the fraud recovery measured by the general tort standard, **Cal. Civ. Code § 3333**, and the alternative contract recovery by **Cal. Civ. Code § 3300**; § 3343's out-of-pocket rule is confined to fraud in the purchase, sale, or exchange of property and does not govern this promissory, royalty-diversion

**MOTION FOR DEFAULT JUDGMENT**

fraud, *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995)). The recovery subsumes the overlapping injury among Counts 4, 5, 6, and 7 — including any restitution available under Cal. Bus. & Prof. Code § 17203 on Count 5 — so there is no double recovery. Because the misrepresentations were Baldonado's personal conduct, the compensatory award runs **against Baldonado**; Frenzee's liability is confined to the counts on which it directly acted (Part C.9).

• **Punitive: $30,141.95 (Cal. Civ. Code § 3294; Count 3 (fraud)) — against Defendant Baldonado.** Defendant's admitted four-year fraudulent pattern, his infringement after Plaintiff's cease-and-desist, and his continued post-suit public performance and promotion of the infringing work establish malice, oppression, and fraud. Plaintiff deliberately requests only a **conservative, fixed 1:1 ratio to the compensatory award** — $30,141.95 — far within the single-digit due-process limit (*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)) and a restrained fraction of what a four-year fraud would support. California requires **meaningful evidence of the defendant's financial condition** before a punitive award may stand (*Adams v. Murakami*, 54 Cal. 3d 105 (1991)), and the record supplies it: Defendant operates an **active, ongoing commercial music enterprise** — he continues to release new commercial music and publicly promote his catalog (the forthcoming "True Story" album; the May 1, 2026 televised interview, the May 29, 2026 music-video release, and the June 6, 2026 promotional event, Ex. **I**) and draws BMI/ASCAP performance-royalty and SoundExchange income from a catalog of roughly one hundred registered works (Exs. **F**, **G**) — establishing present earning capacity and the ability to pay this modest award. *Adams* itself declined to make net worth the exclusive measure of ability to pay; and although some authority looks as well to net worth or the defendant's entire financial picture (*Kenly v. Ukegawa*, 16 Cal. App. 4th 49, 57 (1993); *Robert L. Cloud & Assocs. v. Mikesell*, 69 Cal. App. 4th 1141, 1152 (1999)), the concern animating that rule — that a punitive award not "cripple or bankrupt" the defendant (*Kenly*, 16 Cal. App. 4th at 57) — is not remotely implicated by a **$30,141.95 award against a defendant actively earning from an ongoing commercial catalog**;

**MOTION FOR DEFAULT JUDGMENT**

and a punitive award may in any event rest on the demonstrated profitability of the misconduct (*Cummings Med. Corp. v. Occupational Med. Corp.*, 10 Cal. App. 4th 1291, 1298–1299 (1992)). To the extent a precise net-worth figure is unavailable, that is the direct product of **Defendant's own evasion and refusal to appear**, which defeated the financial discovery that would establish it; a defendant who — by evading service and declining to appear at all — prevents discovery of his finances may not be heard to complain of the resulting gap (cf. *Mike Davidov Co. v. Issod*, 78 Cal. App. 4th 597, 608–609 (2000); *Fernandes v. Singh*, 16 Cal. App. 5th 932, 942–943 (2017)). The request is in all events **severable**: should the Court conclude the financial-condition showing is insufficient, it may decline or reduce the punitive award without disturbing the remainder of the judgment. Punitive runs against Baldonado only (against Frenzee only if alter ego is later established, § 3294(b)). *(Fed. R. Civ. P. 54(c): punitive was demanded in kind in prayer ¶ f — and Cal. Civ. Code § 3295(e) affirmatively prohibited Plaintiff from stating a punitive amount in the pleading — so a fixed award is neither "different in kind from" nor "exceeding in amount" any sum demanded (*see AirDoctor, LLC v. Xiamen Qichuang Trade Co., 134 F.4th 552 (9th Cir. 2025) (Rule 54(c) permits default damages where the prayer sought relief without a stated figure)); and Defendants were separately given actual notice of the exact $30,141.95 amount via the statement served with this Motion under L.R. 55-2.)*

• **Copyright damages (Count 1) — STATUTORY DAMAGES (17 U.S.C. § 504(c)).** Plaintiff's musical Composition was registered (Reg. No. **SRu 1-589-438**, eff. Sept. 26, 2024; Ex. A) **before** Defendant commenced the infringement (~Jan. 2026), so § 412 does **not** bar statutory damages. The infringement is **willful** — created after Plaintiff's July 25, 2024 cease-and-desist and after the registration's effective date, and the work publicly performed and promoted throughout this litigation — supporting an award up to **$150,000** for the work (§ 504(c)(2)). Plaintiff **elects statutory damages** in lieu of § 504(b) actual damages and profits, and requests the **$150,000 willful maximum** — justified not by the work's standalone market value but by the egregiousness

24

**MOTION FOR DEFAULT JUDGMENT**

and deterrence value of the conduct (infringement after the July 25, 2024 cease-and-desist and after the registration's effective date, registration of the work in Defendant's own name, and continued public performance and promotion of the work throughout this litigation) — against Defendants **jointly and severally**, and in all events against Baldonado. The award rests on Defendant's copying of the **registered** Composition; his additional copying of the Hook melody is corroborative of his deliberate, wholesale intent and is **not** an independent basis for the statutory award. Although Plaintiff has since separately registered the Hook (Reg. No. PAu 4-312-843, effective July 6, 2026; Ex. M), that registration postdates the commencement of the infringement, so § 412 would bar statutory damages for the Hook in any event. **Should the Court decline the willful maximum,** the same aggravating factors — infringement after the cease-and-desist and after the registration's effective date, Defendant's false sole registration of the work, and continued post-suit public performance and promotion — support a **substantial enhanced statutory award** well above the statutory floor and commensurate with Defendant's willfulness. This statutory award compensates the infringement of the Composition and is **distinct from** the unpaid-services/royalty compensatory above. Because statutory damages are elected, Plaintiff does **not** also seek § 504(b) actual damages or profits for the Composition (*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994)); **only if the Court declines to award statutory damages** does Plaintiff request, in the alternative, § 504(b) actual damages and Defendant's profits attributable to the Composition, proved through the accounting (*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004)).

• **Interest:** The February 19, 2026 demand computed the interest embedded in its services and Bitcoin components at the 10% contract rate (Cal. Civ. Code § 3289) (Ex. **D**). Because the compensatory recovery is elected on the **fraud** claim, Plaintiff has conservatively recomputed that embedded interest at the **7%** rate applicable to non-contract obligations (Cal. Civ. Code § 3288; Cal. Const., art. XV, § 1), producing the $19,857.21 and $6,828.49 components above (Fulks Decl.

**MOTION FOR DEFAULT JUDGMENT**

¶ 15). Plaintiff further requests pre-judgment interest on the compensatory **principal of $27,456.25** ($18,000.00 + $6,000.00 + $3,456.25) — exclusive of the interest already embedded in those components (computed through February 19, 2026) — **from February 20, 2026** to entry at the same 7% rate (approximately $5.27 per day), under § 3288, the compensatory being elected on the fraud claim (*Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994)) — a discretionary award as to which certainty of the damages is not required — so that no interest accrues on accrued interest; post-judgment interest at 28 U.S.C. § 1961. **Total money judgment to enter now: $150,000 statutory + $30,141.95 compensatory + $30,141.95 punitive + $2,477.40 costs = $212,761.30, plus pre-judgment interest — final, with no amount reserved or deferred.**

• **Costs: $2,477.40** — the $405.00 CM/ECF filing fee and the **$250.00** registered-process-server fee for the June 28, 2026 personal service of the operative First Amended Complaint (both taxable, 28 U.S.C. § 1920(1); *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177–78 (9th Cir. 1990) (per curiam) (private process servers' fees are properly taxed under § 1920(1))); the Court-ordered publication costs (AV Press $660; LA Daily News $831.20); and **$331.20** in process-server fees for the four unsuccessful diligence attempts (One Legal #27738540 $103.50, #27763028 $51.75, #27811555 $124.20, #27811590 $51.75) that constituted the "reasonable diligence" the Court required as the predicate for its Dkt. 12 publication order. Plaintiff submits the $1,822.40 in publication and unsuccessful-diligence costs is likewise taxable under **§ 1920(1)** as fees for service of process: publication in the two newspapers **was** the method of service the Court ordered [Dkt. 12], and the four diligence attempts were the predicate the Court required for that order — fees of the same character *Alflex* holds taxable. In the alternative, should the Court read § 1920(1) more narrowly (*cf. Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334 (2019) (limiting "full costs" to the § 1920 categories)), Plaintiff requests the $1,822.40, severably, in the Court's discretion as the out-of-pocket cost Plaintiff incurred to comply with the Court's own Dkt. 12 alternative-service order; the strictly-taxable floor is in any event **$655.00**. *(The One Legal*

26

**MOTION FOR DEFAULT JUDGMENT**

*chambers-copy delivery charges and the $65 registration fee are not requested.)* **No attorney's fees are sought or recoverable.** Although § 505 fees are available where (as here) statutory damages lie, a self-represented attorney recovers no fees (*Kay v. Ehrler*, 499 U.S. 432 (1991); and under Cal. Civ. Code § 1717, *Trope v. Katz*, 11 Cal. 4th 274 (1995)); the state-law claims provide none.

### E. Injunctive and equitable relief.

• **Permanent injunction (17 U.S.C. § 502):** restraining Defendants from reproducing, distributing, publicly performing, or preparing derivatives of the registered **Composition** ("Color of the Heart," Reg. No. SRu 1-589-438 — its instrumental music, harmonic structure, and chord progression) — not the unregistered catalog and not the carved-out Hook — and directing Defendants to remove, and to request removal of, the infringing re-recording from all platforms, accounts, and channels within their possession, custody, or control (Fed. R. Civ. P. 65(d) specificity; FAC Prayer ¶ b; *eBay* factors satisfied, Part B).

• **Impoundment** of infringing copies (§ 503) — impoundment **only** (the prayer, ¶ c, does not request destruction; Fed. R. Civ. P. 54(c)).

• **Declaratory + correction relief (in personam):** a declaration of Plaintiff's sole authorship/ownership of the registered Composition, and an order directing **Defendant Baldonado** to withdraw or amend his sole-writer BMI work registration of "COLOR BLIND" (Work ID 934342874) and not to oppose Plaintiff's registration of his own authorship share — directed to Defendant in personam, **not** to the non-party PROs (Fed. R. Civ. P. 65(d)(2)). ASCAP has no registration of this work, so the order is confined to the BMI work registration.

27

**MOTION FOR DEFAULT JUDGMENT**

• **Accounting** (Count 8), separately stated by source — composition royalties (BMI/ASCAP performance + § 115 mechanical, including via the Mechanical Licensing Collective) and, as to the sound recordings of the identified works (Bitcoin, Hey, 21 Questions, Eazy Money, Better Days, 11 Eleven, Put Me Down), SoundExchange/distribution/sync income — granted as the relief on Count 8, with the Court retaining jurisdiction to enforce it. Having elected statutory damages, Plaintiff seeks no § 504(b) Colorblind profits except in the alternative event the Court declines statutory damages (Part D).

### F. Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter default judgment against both Defendants, jointly and severally where appropriate, awarding the monetary, punitive, injunctive, and equitable relief set forth above and in the accompanying [Proposed] Default Judgment.

### CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Asaf Fulks, certifies that this brief contains 6,943 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 24, 2026                          Respectfully submitted,

*Asaf Fulks*
Asaf Fulks, Esq. (SBN 343622)
Plaintiff, Pro Se

28

**MOTION FOR DEFAULT JUDGMENT**